IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARITA MILLER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NANCY GIROUX, et al. | : | NO. 12-6567 |

## ORDER

AND NOW, this 19th day of June, 2015, upon consideration of petitioner's pro se objections to Judge Henry S. Perkin's Report and Recommendation ("R&R") (docket entry # 28) and her letter docketed January 16, 2015 (docket entry # 27) in which she states that her objections were mailed late due to an error in the prison mailroom, and the Court finding that:

(a) On September 12, 2014 Judge Perkin filed an R&R recommending that Miller's petition for writ of habeas corpus be denied;

(b) On October 14, 2014, having received no objections from the petitioner, we approved and adopted Judge Perkin's Report;

(c) On November 7, 2014, the Clerk of Court docketed correspondence from the petitioner in which she stated that she had not received a copy of Judge Perkin's R&R, as a result of which we vacated our previous order and directed the Clerk of Court to send the petitioner a copy of the R&R;

(d) On November 24, 2014, the Clerk of Court docketed the petitioner's request for an extension of time in which to file objections, which we granted on November 26, 2014;

(e) On January 15, 2015, the Clerk of Court docketed petitioner's objections, which she mailed timely on January 7, 2015, and we consider them now;

(f) Recapping Miller's procedural history briefly: on October 15, 2004, she was sentenced to life imprisonment for the first-degree murder of Rita Nagel, and a concurrent term

of eighteen years and three months to forty-one years for robbery, forgery, theft and related offenses arising from Miller's theft and use of Nagel's money and credit cards after the murder, R&R at 1-2;

(g) Thereafter, petitioner timely pursued her state-court remedies by filing post-sentencing motions and appealing to the Pennsylvania Superior Court averring (1) the insufficiency of the evidence proving her specific intent to kill Nagel; (2) trial-court errors related to the admission of evidence; (3) trial counsel's ineffectiveness for failing to object to the prosecution's characterization of her as a "predator" and for conceding her guilt in opening and closing statements; and (4) the prosecutor's allegedly improperly commented on her clothing, id.;

(h) On April 24, 2006, the Superior Court denied her appeal and the Pennsylvania Supreme Court denied allocatur on September 15, 2006, id. at 2-3;

(i) On October 19, 2007, petitioner filed a pro se petition for collateral relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), and her appointed counsel filed a no-merit letter and petition to withdraw pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988), id.;

(j) The PCRA court dismissed the petition and the Pennsylvania Superior Court affirmed that decision on March 21, 2012, id.;

(k) Miller's petition for allowance to appeal with the Pennsylvania Supreme Court was denied on October 29, 2012, and she filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 the following month, id.;

(l) In her petition, Miller raised the claims that: (1) the evidence was insufficient to establish that she could form the requisite intent; (2) the trial court erred in admitting

photographs of the victim and crime scene; (3) the trial court erred in admitting allegedly prejudicial testimony of Miller's lesbian relationship with prosecution witness Naomi Moten; (4) the trial court abused its discretion in questioning prospective jurors in voir dire about Miller's Muslim attire; (5) trial counsel was ineffective for failing to object to the prosecution's characterization of her as a "predator" in opening and closing statements; (6) trial counsel was also ineffective for conceding her guilt as part of his overall trial strategy; and (7) trial counsel erred in permitting testimony about other knives in the petitioner's possession, id. at 3-4;

(m) After reviewing the respondents' contentions that the asserted errors alleged only state-law violations and not Constitutional or federal law violations, and concluding that the remainder were procedurally defaulted or meritless, Judge Perkin correctly determined that petitioner should be denied relief with prejudice and her petition dismissed without an evidentiary hearing, id. at 1, 4;

(n) The Clerk of Court having docketed petitioner's objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Local R. Civ. P. 72.1 (IV)(b), we will state Judge Perkin's conclusions before making the obligatory de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made, see 28 U.S.C. § 636(b)(1)(C); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983);

(o) Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), one serving a state sentence may not be granted a writ of habeas corpus unless "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d),

and the claim is exhausted, see Anderson v. Harless, 459 U.S. 4, 7 (1982);

(p) As is well-established, the AEDPA requires the reviewing federal court to defer to the state-court judgment "[a]s long as the reasoning of the state court does not contradict relevant Supreme Court precedent," Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (internal citations omitted); see also R&R at 5;

(q) As to Miller's first claim, Judge Perkin reviewed the testimony of witnesses to whom Miller described how she repeatedly hit the victim with a hammer after being refused money and then cut the victim's throat because "she just wouldn't die," id. at 9, as well as Miller's contention that she had ingested too much cocaine to form the specific intent to kill, id. at 10, and he concluded that the evidence presented at trial was sufficient as a matter of Pennsylvania law to show that Miller had formed the requisite intent, as the Superior Court had earlier concluded, id. at 12-14;

(r) Likewise, Judge Perkin found that the trial court had properly exercised its discretion in admitting crime-scene photographs and did not deprive Miller of fundamental fairness during her criminal trial, id. at 18;

(s) With respect to Miller's contention that evidence of her intimate relationship with Naomi Moten (who testified that Miller described the actions to her) was improperly admitted, Judge Perkin concluded that the issue was one of evidentiary admissibility and therefore state law governs and, further, that there was no evidence Miller had been prejudiced by this evidence, as any jurors expressing discomfort with homosexuality were excluded, id. at 22;

(t) Judge Perkin also found meritless Miller's claim that she was prejudiced by evidence of her Muslim faith -- a claim she presented on direct appeal that the reviewing court found meritless – particularly as her counsel posed the question at voir dire and there was

4

voluminous testimony about Miller's non-Muslim sartorial appearance prior to trial, id. at 23-24;

(u) As to Miller's claim concerning her counsel's ineffectiveness in failing to object to the prosecution's description of her as a predator, the Superior Court concluded that the prosecutor's use of "predator" and "prey" was not so prejudicial or inflammatory as to warrant a mistrial or new trial under Pennsylvania law and it therefore rejected the ineffective assistance claim, and Judge Perkin deferred to that conclusion because petitioner could not show that the Superior Court's decision was either an erroneous or objectively unreasonable application of Sixth Amendment Supreme Court jurisprudence, id. at 28;

(v) As to the ineffectiveness of counsel's strategic concession of guilt, the Superior Court reviewed Miller's extensive March 17, 2005 testimony in a post-sentencing hearing at which she stated her counsel had told her he would try to convince the jury that she was guilty of something less than first or second degree murder, id. at 29, and concluded that trial counsel's strategy had a reasonable basis because Miller was faced with overwhelming forensic, physical and testimonial evidence of her guilt, id. at 30;

(w) Judge Perkin found no basis for concluding that the state court's determination was erroneous or that counsel was ineffective for failing to pursue a meritless claim, id. at 32;

(x) Finally, Judge Perkin reviewed Miller's claim that the trial court abused its discretion in admitting evidence that, after Rita Nagel's murder, the petitioner owned a knife set that lacked one knife, id. at 34;

(y) Miller contends this evidence "had no link to the crime," id., and raised the issue on direct appeal where the trial court, writing for the benefit of the Superior Court on appeal held the claim was meritless because the recovery of knives from the trunk of a Cadillac was relevant as the "evidence presented at trial established that the defendant stabbed Rita Nagel several times

then discarded the knife in an abandoned lot near her girlfriend's house," id. -- and "[a]s such, [the] evidence [was] that the defendant was in possession of a knife which could have been one of the murder weapons," id.;

(z) The Superior Court affirmed and, as before, Judge Perkin found that Miller raised no challenges rooted in Supreme Court principles in the state forum or here, and therefore this claim fails as well, id. at 35;

(aa) Miller objects to Judge Perkin's conclusions;

(bb) When a party objects to a Report and Recommendation, we make a de novo determination of those portions of the Report or specified proposed findings or recommendations to which objection is made, and we may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge, see 28 U.S.C. § 636(b), and we "may also receive further evidence or recommit the matter to the magistrate judge with instructions," id.;

(cc) In addition to the objections she details to Judge Perkin's R&R, Miller contests his conclusion that her PCRA claims are "procedurally defaulted, meritless, or both," R&R at 4, but does not identify which claims those are, Obj. at 4, and she seeks review of her PCRA claims which she details as (1) the forensic examination of the victim's body and evidence as to the sequence of injuries and cause of death, (2) the Commonwealth's alleged reliance on hearsay evidence to convict her in violation of her Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process, while the trial court prohibited the defense from relying on hearsay, (3) the Commonwealth's failure to meet its burden of proof that Miller was guilty of murder in any degree, and (4) trial counsel's ineffectiveness, id. at 6, 7;

(dd) Miller seeks review of her PCRA issues or, in the event they have not been

exhausted, a stay of the present proceeding so that she may return to state court and exhaust her state remedies, id. at 9;

(ee) But it is well-established that "issue[s] raised anew in a habeas petitioner's objections to a magistrate judge's report ... are not properly before the court, and thus are not to be addressed," see Stromberg v. Varano, 2012 WL 2849266 at *2 n. 14 (E.D.Pa. July 11, 2012) (Rufe, J.) (collecting cases); see also Local R. Civ. P. 72.1(IV)(c) ("All issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge");

(ff) We will therefore decline to examine the issues Miller raises as to her unreviewed PCRA claims;

(gg) Turning to the objections Miller raises to Judge Perkin's conclusions, she contends first that the trial evidence was insufficient to convict her under Pennsylvania law because the "jailhouse witness's testimony was full of inconsistent, fabricated and misleading statements" and a recurring "cause of wrongful convictions is the testimony of witnesses who testify against a defendant in exchange for a promise or implicit reward," id. at 11;

(hh) She points to the jailhouse witness's acknowledgment that the lenient treatment she received for her testimony, including an immediate discharge from prison, was "a pretty good deal," id. at 12;

(ii) She also argues that her co-defendant's testimony concerning her out-of-court statements to him was impermissible hearsay, for which he also received a deal, id. at 13, 14, and points us to cases from other state supreme courts and other Circuits to bolster her contention that other reviewing courts have looked askance on the "unholy alliance between con artist

7

convicts who want to get out of their own cases [and] prosecutors who are taking what appears to be the easy route rather than really putting their cases together with solid evidence," id. at 14;

(jj) She also points to inconsistencies in Naomi Moten's testimony between her initial statements to detectives and her in-court testimony concerning Miller's use of the word "bitch" to describe the victim and her description of blood flowing from the victim, id. at 16, 17;

(kk) She also claims that the Commonwealth knowingly used perjured testimony -- which she does not identify but presumably includes the testimony from her co-conspirator Custis and the testimony of other witnesses who contradicted her version of events, id. at 19-22;

(ll) In a similar vein, she contends that the Commonwealth lacked the evidence to prove beyond a reasonable doubt that she had the specific intent to kill because she admitted only to striking the victim once and the Commonwealth's case rested entirely on hearsay evidence, id. at 22-24, and she claims a due process violation, id. at 24;

(mm) As stated above, we must consider Miller's claims through the doubly deferential lens that the AEDPA imposes -- that is to say, pursuant to Jackson v. Virginia, 443 U.S. 307 (1979), "the relevant question" for a court reviewing a habeas petitioner's due process claim based on the sufficiency of the evidence is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," viewing the evidence in the light most favorable to the prosecution, id. at 319 ("This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution") (emphasis in original);

(nn)  It is well-established that the AEDPA permits habeas relief only if the Commonwealth Court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law" as determined by the Supreme Court in Jackson, see, e.g., Lopez v. Smith, 135 S.Ct. 1, 4 (2014);

(oo)  We cannot conclude that the state court disposition was an objectively unreasonable application of the Jackson standard;

(pp)  The Superior Court reviewing Miller's sufficiency claims went over the in-court testimony at length, including that of the jailhouse informant Lakia Green, Miller's paramour Naomi, her co-conspirator Charles Custis, and the Medical Examiner who described the range and extent of the victim's wounds, and, applying the standard established in Commonwealth v. Zingarelli, 839 A.2d 1064, 1069 (Pa. Super. Ct. 2003), concluded that the evidence clearly established that the defendant killed Rita Nagel and that she had the specific intent to kill, see Commonwealth v. Miller, 897 A.2d 1281, 1285 (Pa. Super. Ct. 2006);

(qq)  To prevail on a first-degree murder charge under Pennsylvania law, the Commonwealth must show the defendant acted with a specific intent to kill and that the killing was willful, deliberate and premeditated, Commonwealth v. Cuevas, 832 A.2d 388 (Pa. 2003), and where specific intent may be inferred, inter alia, from circumstantial evidence showing the defendant used "a deadly weapon on a vital part of a victim's body," Commonwealth v. Fletcher, 861 A.2d 898, 907 (Pa. 2004) (internal citations omitted);

(rr)  Reviewing the trial evidence in Miller's case, the Superior Court held that "multiple witnesses and a plethora of physical and expert evidence" allowed the jury to discount Miller's shifting accounts of events, including her contention that she inflicted a single blow after her co-conspirator had dealt the fatal wounds, see Miller, 897 A.2d at 1285;

(ss) We agree with Judge Perkin that "enough evidence was presented" under Pennsylvania law for the Commonwealth jury to find that Miller's conduct was premeditated insofar as she went to the victim's apartment, unsuccessfully demanded money, retrieved the murder weapon from her apartment and returned to confront the victim again, see R&R at 14, and this result was "in no way contrary to, or an unreasonable application of the Jackson standard," id., and we will therefore overrule Miller's objections to Judge Perkin's report as to the sufficiency of the evidence and her conviction for first-degree murder;

(tt) Miller also contends that Judge Perkin erred by denying her claim that the photographs of the victim's body and the crime scene should not have been admitted into evidence, Obj. at 24-26;

(uu) Once again, the Superior Court reviewed the trial court's admission of photographic evidence under the standard established in Commonwealth v. Reed`, 465 (Pa. Super. Ct. 1990) ("If the photographs are deemed inflammatory, then the trial judge must decide whether [they] are of such essential evidentiary value that the need clearly outweighs the likelihood of their inflaming the passions of the jurors"), and deferred to the trial court's findings that the admitted photographs were "necessary to accurately portray the crime scene, and the nature and extent of the victim's injuries," Miller, 897 A.2d at 1287 (quoting Tr. Ct. Op., Lewis, J. 6/13/05 at 11-12);

(vv) On direct review, the Pennsylvania Superior Court reviewed at length the trial court's application of Pennsylvania law and evidentiary standards and deferred to the trial judge's discretion, see R&R at 17, 18, and we agree with Judge Perkin that state court rulings on evidentiary matters are not reviewable absent an error of federal constitutional dimension, not present here, id. at 18; see also Bisaccia v. Attorney General of State of New Jersey, 623 F.2d

307, 312 (3d Cir. 1980) ("It is a well-established principle that evidentiary errors of state courts are not considered to be of constitutional proportion, cognizable in federal habeas corpus proceedings, unless the error deprives a defendant of fundamental fairness in his criminal trial");

(ww) The Pennsylvania Superior Court deferred to the trial judge's discretion and we must do so as well because the photographs, however grisly, did not deprive Miller of fundamental fairness at her criminal trial;

(xx) Miller next contends that Judge Perkin should have agreed with her that the trial court improperly admitted evidence of her relationship with Naomi Moten because, she contends, the prosecution played upon prejudices by stating in her opening statement that Miller spoke to Moten of the killing during "pillow talk," Obj. at 27, whereas Ms. Moten testified that the conversation took place in her living room or dining room area, id. at 28;[1]

(yy) Judge Perkin discussed at length the Superior Court's review of the trial court's decision to permit the Commonwealth's jury question during voir dire over the defense's objections as to whether evidence that the defendant engaged in a bisexual relationship with one of the witnesses would cause that juror to be unable to be fair and impartial, see R&R at 20, and Judge Perkin concluded that the question was one of evidentiary admissibility and therefore a matter of state law, id. at 22;

(zz) Since the question was designed to filter out jurors who could have been prejudiced by the existence of Miller's relationship with Moten, it is unclear how the mention of that relationship, however inaccurate its detail, harmed Miller and we will therefore overrule her

---

[1] Miller states that Judge Perkin concluded that "this issue is procedurally defaulted without stating how." Obj at 26. But Judge Perkin was merely stating the respondents' position, R&R at 19. Indeed, he detailed at length the reasons, rooted in the AEDPA's doubly deferential standard, as to why the trial court's evidentiary decision as reviewed by the Pennsylvania Superior Court did not reveal an error of constitutional magnitude granting a writ of federal habeas corpus.

11

objection to Judge Perkin's report as to this claim;

(aaa) Miller also contests Judge Perkin's denial of her claim that she was prejudiced by evidence of her Muslim faith, Obj. at 30;[2]

(bbb) She contends that the mention of her religion was solely to inflame the jury and prejudiced her right to a fair trial and she observes that the trial court expressed concern about the Commonwealth's inquiry into whether Miller was known to be a Muslim or dressed as a Muslim because "her religion has nothing to do with this case," id. at 31, 32 (trial citation omitted in original);

(ccc) On direct review, the Superior Court reviewed Miller's contention that she was entitled to a new trial because the trial court erred in permitting the Commonwealth to question jurors whether they would be prejudiced against a Muslim and in allowing mention of her Muslim garb, see Miller, 897 A.2d at 1289;

(ddd) The Superior Court found that the defense asked potential jurors whether they would be biased against Miller as a result of her faith and failed to challenge the Commonwealth's questions about her garb, id.;

(eee) The Superior Court also observed that the trial court asked counsel the purpose of the line of questioning:

> Counsel for the Commonwealth explained she was seeking to establish that appellant had changed her appearance in an effort to hoodwink the jury into thinking she could not possibly have been the perpetrator, who was described as wearing, inter alia, tight jeans and cut-off t-shirts. The court acknowledged that a witness may comment on the fact a defendant has changed her appearance since the last time he or she saw her, but admonished counsel to

---

[2] Miller again contends that Judge Perkin deemed this issue procedurally defaulted, Obj. at 30. Rather, Judge Perkin again merely cited the respondents' contention that the claim was "factually unsupported, procedurally defaulted, and was properly rejected on the merits by the state courts," R&R at 22, before addressing the merits of Miller's claim at length.

>     steer clear of any mention of religion. . . . The Commonwealth
>     complied. We agree with the manner in which the trial court
>     handled this situation, exercising its discretion in an appropriate
>     fashion[,]

id. at 14;

(fff) We agree with Judge Perkin that the issue Miller raises turns on admissibility of evidence and, as before, is not of constitutional dimension inasmuch as the trial court cautioned the Commonwealth about references to religion and it complied;

(ggg) Miller fails to show how her counsel's queries of prospective jurors or the permissible inquiries into her changed appearance prejudiced her;

(hhh) Because Miller cannot show an error by the state court of constitutional magnitude, her claim must be denied and we will overrule her objection to Judge Perkin's R&R as to this claim;

(iii) Miller also contends that her counsel was ineffective for failing to object to the prosecution's characterization of her as a "predator" and the victim as "prey" in opening argument and summation, and she contests Judge Perkin's conclusion that this claim is meritless, Obj. at 32-35;

(jjj) In its comprehensive review of her ineffectiveness claim,[3] the Superior Court observed that

> In order for Appellant to prevail on a claim of ineffective
> assistance of counsel, [she] must show, by a preponderance of the

---

[3] The Superior Court explained its consideration of Miller's ineffectiveness claim on direct appeal: "While claims of ineffective assistance generally are considered only in petitions for post-conviction collateral relief, in the matter before us, these allegations of trial counsel's errors were raised by new counsel in his post-sentence motion, and the court specifically conducted an evidentiary hearing for the purpose of resolving these claims. . . . On that basis, we may consider the ineffectiveness claims on direct appeal." Miller, 897 A.2d at 1290 (internal citations omitted).

13

> evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. Appellant must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Id. The petitioner bears the burden of proving all three prongs of the test[,]

Miller, 897 A.2d at 1290-91 (internal citations omitted);

(kkk) The Superior Court explained that there could be no prosecutorial misconduct when comments, such as the prosecution's use of "predator," were rhetorical flourishes, in contrast with those it condemned in Commonwealth v. Scarfo, 611 A.2d 242, 283 (Pa. Super. Ct. 1992), where the prosecution impermissibly compared defendants to wolves and a wolf pack, "exceed[ing] the bounds of propriety and constitute[ing] an appeal to the passions and prejudices of the jury," Miller, 897 A.2d at 1291;

(lll) In the absence of prosecutorial misconduct, the Superior Court reasoned that defense counsel could not be ineffective for failing to object to the prosecutor's use of the words "predator" and "prey";

(mmm) Again, the AEDPA compels us to defer to the Superior Court's conclusion that the prosecutor's comments were within the bounds of propriety;

(nnn) Where the state court has already rejected an ineffective assistance of counsel claim, a federal court must defer to the previous decision pursuant to 28 U.S.C. § 2254(d)(1); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) ("If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' Where the state court's application of governing federal

law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.") (quoting 28 U.S.C. § 2254(d)(1));

(ooo) We will therefore overrule Miller's objection as to this claim;

(ppp) Next, Miller objects that her counsel was ineffective for conceding her guilt to the jury in opening arguments, a strategy she contends counsel pursued without her acquiescence, Obj. at 35-38;

(qqq) She claims that before trial her counsel told her that the Commonwealth offered an open plea but she opted to go to trial rather than accept to plead to anything but third-degree murder, id. at 36, and she contends that in the post-trial evidentiary hearing she was not colloquied concerning her assent to her counsel's strategy, which she denies granting, id. at 37, 38;

(rrr) On March 17, 2005, during the Court of Common Pleas's hearing on her trial counsel's ineffectiveness, the Court conducted the following colloquy with Miller's trial counsel, Mark Mungello., Esq.:

> Mungello: . . . Ms. Miller told me she would plead guilty to third-degree murder, but I could not negotiate that for her so that's why – so that's why we went to trial, to try to obtain a guilty verdict of something less than first- or second-degree murder.
> The Court: Well, prior to trial did you inform Ms. Miller of your intention to concede essentially her guilt of some crime or some degree of homicide prior to giving your opening to the jury?
> Mungello: Yes. I told her based on what she had told me about her involvement in this incident and based upon the last two pages of her statement where she, as the detective said, admitted to her involvement, I told her I was going to admit to that, but not admit to first- or second-degree murder but ask the jury to find her at worst guilty of something less than that because that's why we were going to trial. That was the only realistic hope we had and that was my

15

|  | strategy. |
|---|---|
| The Court: | what, if any, reaction did Ms. Miller have to your strategy in that regard? |
| Mungello: | She understood. |

see N.T. 3/17/2005 at 11:18-12:16;

(sss) The Court also colloquied Miller herself:

| The Court: | Now, prior to the commencement of testimony in your case, did Mr. Mungello discuss the content of his opening statement with you? |
|---|---|
| Miller: | What Mr. Mungello – well, he came to see me one day before trial had got started and he said that they were saying for me to admit my guilt and let the judge decide what level of murder, whether its first, second, or third. So I told Mr. Mungello that I don't agree with that and I would rather take it to trial, but he kept telling me that the odds were stacked against me with those witnesses and that he would try to convince the jury that I was guilty of something less than first, second, or third – first or second, but I kept explaining to Mr. Mungello that I didn't kill her, but he never said that he would stand in front of a jury and say, okay, Ms. Miller is guilty. He never told me what actual words that he would use, [no]. |
| The Court: | Had Mr. Mungello told you that he intended to tell the jury that you were guilty of something, would you have been agreeable to that trial strategy? |
| Miller: | Something, not guilty of murder. I was guilty of hitting her, yes, I was guilty of striking her, I was guilty of her checks, the things I was guilty of. Not guilty of first-degree murder. That was my understanding. . . . |
| The Court: | But, in essence, essentially Mr. Mungello did not discuss the contents of his opening statement with you? |
| Miller: | No, he didn't go into specific the words that he would use to the jury. The only thing that he said was that he would try to convince the jury that I was guilty of something less than first or second degree. Now, striking Ms. Rita Nagel and the checks, I don't know what that falls under, so I was willing to admit to third-degree[,] |

16

id., at 38:3-39:5 and 39:14-39:23;

(ttt) The Superior Court also reviewed defense counsel's opening and closing remarks as well as the hearing testimony and concluded, "A review of the record indicates appellant was well aware of counsel's strategy and agreed to it. Given the plethora of evidence, we conclude counsel's strategy was sound," Miller, 897 A.2d at 1293;

(uuu) We agree with Judge Perkin's assessment that "the state courts' resolution of this issue was supported by the facts of record and is not contradicted by relevant federal law," R&R at 32;

(vvv) Specifically, as we explained above, when a state court has rejected an ineffective-assistance claim the federal court may only grant habeas relief if the decision was contrary to, or involved an unreasonable application of, clearly-established Federal law, as determined by the Supreme Court of the United States, that is to say, not only erroneous, but objectively unreasonable, see Yarborough, 540 U.S. at 4, and we cannot so conclude here because the state court's conclusion that Miller's trial counsel's strategy to seek to minimize her culpability while admitting she played some lesser role was not objectively unreasonable in the face of evidence -- including her own admissions;

(www) Finally, Miller argues her Due Process rights were violated by the admission -- over her counsel's objections -- of a knife set, with one knife missing, found in the back of her car during a police search, Obj. at 38;

(xxx) Miller contends that the knives were not relevant in the absence of any testimony linking them to the killing, id. at 39 (citing Pa. R. Evid. 401, which states, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action");

(yyy) The Superior Court, reviewing the standard for admissibility, concluded the trial court did not err because admission was relevant "to show that the [appellant] was in possession of a knife which could have been one of the murder weapons," Miller, 897 A.2d at 1288 (citing the trial court opinion);

(zzz) Judge Perkin observed that Miller did not challenge the state courts' disposition of her claim "based on the admissibility ruling, much less [a claim] grounded in constitutional principles," R&R at 35;

(aaaa) Here we part company with Judge Perkin because Miller raised an admissibility issue by citing to the Pennsylvania Rules of Evidence and the Superior Court reviewed her claim on that very basis;

(bbbb) As such, we conclude that this claim turns on an issue of evidentiary admissibility that is the exclusive province of state law, and we do not find that the Superior Court's ruling on this matter presents an error of federal constitutional dimension;

(cccc) Finally, Judge Perkin found that there was no reason to issue a certificate of appealability;

(dddd) Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit provides that "at the time a final order denying a habeas petition . . . is issued, the district court judge will make a determination as to whether a certificate of appealability should issue";

(eeee) Such a certificate should issue only if the petitioner demonstrates that "reasonable jurists could debate" whether the petition states a valid claim for the denial of a constitutional right, Slack v. McDaniel, 529 U.S. 473, 484 (2000); and

(ffff) We do not believe that reasonable jurists could debate the conclusion that Miller's

petition does not state a valid claim for the denial of a constitutional right and we therefore decline to issue a certificate of appealability;

It is hereby ORDERED that:

1. Miller's objections are OVERRULED;

2. Judge Perkin's Report and Recommendation is ADOPTED and APPROVED;

3. Miller's petition for a writ of habeas corpus is DENIED WITH PREJUDICE and DISMISSED;

4. There being no warrant for a certificate of appealability, we DECLINE to issue one; and

5. The Clerk of Court shall CLOSE this case statistically.

BY THE COURT:


 /s/ Stewart Dalzell, J.
Stewart Dalzell, J.